# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| States Credit Holdings, II, LLC, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | Case No: 15 C 50090 |
| | ) | |
| Lyle E. Schilpp, et al., | ) | |
| | ) | |
| *Defendants*. | ) | Judge Frederick J. Kapala |

## ORDER

Plaintiff's motion for partial summary judgment [32] is granted in part and denied in part.

## STATEMENT

Plaintiff, States Credit Holdings, II, LLC ("SCH"), has sued defendants, Lyle E. Schilpp and Sonya A. Schilpp, alleging breach of contract based on a default and failure to pay with respect to five separate promissory notes (Counts I-V), a claim for replevin (Count VI), and a claim asserting fraudulent transfer (Count VII). Currently before the court is plaintiff's motion for partial summary judgment on Counts I through VI. For the reasons stated below, the motion is granted in part and denied in part.

### I. BACKGROUND

Between December 31, 2011, and June 3, 2013, defendants executed five promissory notes in favor of U.S. Bank in exchange for loans totaling nearly $2 million. The promissory notes were secured by a December 2011 Business Security Agreement[1] that listed a multitude of items pledged as collateral, including all equipment, fixtures, and "farm products." On December 11, 2014, the five promissory notes, the Business Security Agreements, and the corresponding UCC statements, were all assigned to plaintiff by U.S. Bank. As of the date of the initial complaint in this case, all five notes had either matured and were due in full or had been accelerated and declared due immediately. Defendants have admitted that they failed to pay the amounts due and owing under these notes, and they have conceded liability on Counts I-V in their response to plaintiff's motion for partial summary judgment.

Given this concession, the only issue with respect to Counts I-V is the calculation of damages. According to plaintiff's initial summary judgment filings, the following amounts were due and owing under the promissory notes as of October 1, 2015: (a) Note 1 – $1,009,581.52; (b) Note

---

[1]Note 5 was also secured by a second Business Security Agreement that was executed contemporaneously with that note.

2 – $30,249.81; (c) Note 3 – $149,415.51; (d) Note 4 – $451,672.22; and (e) Note 5 – $67,422.59. Plaintiff supported these figures with an affidavit from Cory Butler, plaintiff's representative, who swore that he had personal knowledge of these facts "based on review of business records maintained in the ordinary course of business." Plaintiff also submitted copies of the promissory notes along with a "Loan Payoff" printout for each of the five notes showing, among other things, the amounts due and owing as of February 17, 2015, the applicable interest rate, and the per diem accrual amount.

In their response to plaintiff's motion, defendants attacked Butler's affidavit, arguing that there were no supporting documents to substantiate the dollar amounts that were claimed, and that plaintiff failed to lay a proper foundation for the documents that were attached to the affidavit. Notably, however, defendants never offered any alternative dollar amounts or any affirmative evidence showing that the amounts claimed by plaintiff were erroneous. In its reply, plaintiff asserted that Butler's affidavit was sufficient to establish the damages amount but nevertheless submitted a second affidavit from Butler which included additional business records regarding defendants' loans. In particular, in Exhibit A to the affidavit, plaintiff provided records reflecting the details and payment history for the loans during the time the notes were held by U.S. Bank, and in Exhibit B, plaintiff provided daily balance reports for each of the loans. Given this new evidence, defendants were granted leave to file a sur-reply. In that brief, defendants continued to challenge the foundation of plaintiff's exhibits, arguing that Exhibit A to Butler's second affidavit is based on U.S. Bank's business records with no basis to lay the foundation for those third-party records, and that as a result plaintiff's records in Exhibit B are somehow "rendered moot."

## II. ANALYSIS

### A. Breach of Contract (Counts I-V)

Under Illinois law, in order to prevail on a breach of contract claim, plaintiff must show "(1) offer and acceptance, (2) consideration, (3) definite and certain terms, (4) performance by the plaintiff of all required conditions, (5) breach, and (6) damages." Ass'n Benefit Servs., Inc. v. Caremark Rx, Inc., 493 F.3d 841, 849 (7th Cir. 2007). In this case, defendants have conceded that plaintiff can prove its breach of contract claims in Counts I-V, including the fact that plaintiff has suffered damages as a result of defendants' breach. The only issue on these counts, therefore, is whether plaintiff has sufficiently proven the precise amount of damages. After careful review of the evidence presented and consideration of defendants' evidentiary arguments, the court concludes that plaintiff has met its burden to prove the amount of damages, and no reasonable jury could conclude otherwise.

In order to prove its damages amount, plaintiff relies on the business records exception to the hearsay rule. See Fed. R. Evid. 803(6). "To be admissible as a business record, a document must have sufficient indicia of trustworthiness to be considered reliable." Woods v. City of Chi., 234 F.3d 979, 988 (7th Cir. 2000). "Normally, to demonstrate such trustworthiness and reliability at the summary judgment stage, the party seeking to offer the business record must attach an affidavit sworn to by a person who would be qualified to introduce the record as evidence at trial, for example, a custodian or anyone qualified to speak from personal knowledge that the documents were admissible business records." Id. The decision to admit a document under the business records

exception is "entrusted to the broad discretion of the trial court." Datamatic Servs., Inc. v. United States, 909 F.2d 1029, 1032 (7th Cir. 1990).

In his original affidavit, Butler averred that he had "custody, supervision, and control of the loan records concerning the promissory notes and loan documents" that are referred to in the complaint, that those documents are "business records maintained in the ordinary course of business," and that he had reviewed those documents and had the necessary "personal knowledge required to . . . confirm the accuracy of the information set forth" in his affidavit. Absent some contrary evidence–which has never been submitted by defendants–this affidavit is sufficient to demonstrate the trustworthiness and reliability of plaintiff's business records for purposes of summary judgment. See Woods, 234 F.3d at 988.

Among the records included by reference in Butler's affidavit are the "Loan Payoff" printouts for each of the five promissory notes, which show the balance due on each loan as of February 17, 2015 (the date they were printed), the interest rate, and the per diem accrual amount. (See Pl.'s Mot. for Summ. J., Exs. E through I.) Although defendants questioned the reliability of these summaries in their response brief by asserting that there were no supporting documents to substantiate the dollar amounts, this challenge is without merit. See Andersen v. Harris & Harris, Ltd., No. 13-CV-867-JPS, 2014 WL 1600575, at *5 (E.D. Wis. Apr. 21, 2014) (noting that "neither the business records exception to the hearsay rule, nor the best evidence rule are violated by the presentation of summaries of properly kept business records which if offered into evidence would themselves be admissible"); Bank of N.Y. Mellon v. Murillo, No. 12-CV-6726, 2014 WL 773041, at *3 (N.D. Ill. Feb. 25, 2014) (finding the business records exception applicable where, in relevant part, "Rojas attached a printout of Ocwen's regularly maintained Servicing Record, which provides details including the loan number, the loan's interest rate, the principal balance, and the payments on which Murillo has defaulted").

While Butler's original affidavit and the exhibits referenced therein may have been sufficient on their own for plaintiff to establish an accurate damages amount, any doubt or confusion on the issue of damages is cleared up by Butler's second affidavit and the additional records presented in Exhibit B, which show the daily balance reports for defendants' loans.[2] This second affidavit

---

[2]The bulk of defendants' sur-reply contests the admissibility of Exhibit A, which appears to be business records created by U.S. Bank prior to the assignment of the loans to plaintiff. "A document prepared by a third party may qualify as another business entity's business record under Rule 803(6) if that entity integrated the third-party record into its records and relied upon it in its day-to-day operations." BP Amoco Chem. Co. v. Flint Hills Res., LLC, 697 F. Supp. 2d 1001, 1021 (N.D. Ill. 2010). That appears to be the case here, as Butler identifies the records in Exhibit A as "records kept by Plaintiff in the regular course of business," and it seems highly likely that these types of records would be integrated into plaintiff's own business records once the loans were assigned to it. Some district courts in this circuit, however, have required additional evidence to substantiate that the third-party documents met all the requirements to be considered admissible business records of the third party, which is something that Butler is unable to provide. See Webb v. Midland Credit Mgmt., Inc., No. 11 C 5111, 2012 WL 2022013, at *4 (N.D. Ill. May 31, 2012) ("Thus, to admit the third party documents attached as Exhibits A through F to Minford's declaration as business records, defendants must demonstrate that the third party author created such documents on a regular basis and kept the document at issue in the course of its regularly conducted business activity."); Cunningham Charter Corp. v. Learjet, Inc., No. 07-CV-233-DRH-DGW, 2012 WL 1565532, at *3 (S.D. Ill. May 2, 2012) ("Thus, plaintiff must not only demonstrate that defendant kept the Dayton Report in its records, it must also demonstrate the Dayton Research Institute kept the

establishes that the attached records are business records kept by plaintiff in the regular course of business, that the records were made at or near the time the transaction occurred, and that they were made with knowledge of the transaction being recorded. Furthermore, Exhibit B provides the additional documentation to substantiate the damages amounts that defendants had claimed was missing from the initial summary judgment submission. In particular, a careful review of Exhibit B demonstrates that the "Loan Payoff" printouts from February 17, 2015, accurately show the balances due as of that date. Likewise, Exhibit B also corroborates the amounts that were due as of October 1, 2015, which were previously set forth in Butler's original affidavits.[3]

While it is important to ensure that plaintiff can provide sufficient evidentiary support for its damages claim, it is apparent that defendants have no basis to challenge the actual figures that have been presented to the court. Accordingly, the court concludes that plaintiff has supported its claims with admissible business records and will grant the motion for summary judgment as to Counts I-V. The court will enter judgment in favor of plaintiff at the conclusion of the case on these counts and will calculate a total damages award at that time, which will consist of the balance due on each note as of October 1, 2015 (as set forth above and in Butler's original affidavit), plus any additional interest that has accrued since that date (based on the per diem figures set forth in Exhibits E through I to plaintiff's summary judgment motion).[4]

## B. Replevin (Count VI)

Plaintiff also seeks summary judgment on its claim for replevin alleged in Count VI of the amended complaint. "Replevin is a strict statutory proceeding, and the statute must be followed precisely." Carroll v. Curry, 392 Ill. App. 3d 511, 513 (2009). "The primary purpose of the replevin statute is to test the right of possession of personal property and place the successful party in possession of the property." Id. at 514. An "order for replevin shall require the sheriff, or other officer to whom it is directed to take the property, describing it as in the complaint, from the possession of the defendant, and deliver the same to the plaintiff." 735 ILCS 5/19-109.

In the amended complaint, plaintiff alleges that defendant "pledged certain items" as collateral to secure their loans, and it incorporates the December 2011 Business Security Agreement by reference into the complaint. That document, in turn, provides an extremely comprehensive list of potential items or categories of items that are considered collateral. Plaintiff further alleges in

---

report in the course of its regularly conducted business activity and created such reports on a regular basis."). Ultimately, however, the court need not resolve this issue because even if the court ruled that Exhibit A was not admissible at this point, the court's analysis would not be any different, as Exhibit A deals primarily with the origination of the loans and is not required to establish an accurate damages amount resulting from defendants' failure to pay. Moreover, the court fails to see how a ruling against the admission of Exhibit A would somehow make plaintiff's business records contained in Exhibit B moot, and the court rejects this undeveloped argument.

[3]The court notes that the amounts due shown in Butler's original affidavit for Note 3 and Note 4 are one penny less than the amounts shown on Exhibit B for October 1, 2015, but the court assumes this is merely an issue relating to rounding.

[4]The per diem accrual on each count is as follows: Count I – $217.31192; Count II – $6.90206; Count III – $35.82624; Count IV – $97.22222; and Count V – $14.03333.

4

Count VI of the amended complaint that "the majority of the collateral and crops are located at 1025 Schilpp Road, Harmon, Illinois and presently includes, but is not limited to, crops, farm equipment and machinery, and motor vehicles."

In their response to the motion for summary judgment, defendants argue that plaintiff has failed to allege with any degree of specificity what the actual collateral is that is the subject of the replevin action. Defendants further note that Lyle Schilpp's father and brother are both farmers and they keep some of their equipment at the 1025 Schilpp Road location, such that any order of replevin that does not precisely describe the collateral to be taken could result in the wrong property being taken. The court agrees with this argument. Although it is clear that plaintiff will be entitled to recover its collateral from defendants—whether through its pending action for replevin or through some form of post-judgment enforcement—at this point in the proceedings, the court does not have enough information to grant judgment in plaintiff's favor and enter an order of replevin. Indeed, plaintiff recently filed a motion that is pending before the magistrate judge seeking leave to file a second amended complaint to add additional parties to the replevin count (Lyle's father and brother), which further demonstrates that summary judgment on Count VI would be premature. Accordingly, the court denies the motion for summary judgment as to Count VI without prejudice.

### III.  CONCLUSION

Based on the foregoing, the court grants plaintiff's motion for partial summary judgment as to Counts I-V and denies the motion with respect to Count VI.

Date: 7/22/2016

ENTER:

_____
FREDERICK J. KAPALA

District Judge